SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

**Case 28.**

**IN CHANCERY.**

Swigert *vs.* Bank of Kentucky, &c.,
and
Bank of Kentucky *vs.* Pilcher.

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. A mortgagor, even after a decree of foreclosure and order of sale, is still regarded in equity as the owner of the mortgaged property. He has the right to pay off the debt and hold the property. If a sale is made, only so much will be sold as will pay the mortgage debt. Consequently the mortgagor has the right to procure another to pay the mortgage debt for him or to buy the equity of redemption when it is sold under execution, and give such purchaser a lien for the price paid, and for any other liabilities to such purchaser, who will occupy the position of a second mortgagee.

2. A valid lien in equity may be created by writing not under seal.

3. A creditor having a lien upon two funds may, by a subsequent lien-holder on one of the funds, be compelled to exhaust the fund upon which the latter has no lien, before resorting to that on which he has a lien also.

4. The chancellor will not divest a creditor of a fund which has been transferred to him by an insolvent debtor, for the purpose of benefitting another creditor of the insolvent, when the equities are equal, until all his just claims against the insolvent are satisfied, unless such claims were created subsequently to notice of the equity of the creditor seeking to subject it.

5. Mortgages and deeds of trust, not recorded, are not valid at law against creditors, nor against any legal right to the property which creditors acquire in good faith; but when the parties contesting all claim under equities, courts of equity decide upon equitable principles. (*Bank of Kentucky vs. Vance*, 4 *Littell*, 169; *Bailey & Carter vs. Welch*, 4 *B Monroe*, 244.)

6. A general creditor coming into a court of equity for relief, cannot, in general, claim anything which the debtor could not claim, unless in cases of fraudulent disposition by the debtor. He can claim no equitable right which the debtor himself could not assert.

[The facts of these cases are set out in the opinion of the court.—REP.]

*J. Speed* and *T. N. Lindsey* for appellant Swigert—

The appellant, Swigert, complains that the chancellor erred in not applying the proceeds of the sale

Swigert
vs.
Bank Ky , &c.
and
Bank of Ky.
vs.
Pilcher.

of the Boone lands to the discharge of the debt due to Pope, and the debt upon which Thomas A. Marshall, John Joyes, and James Birney were sureties; and what remained of those debts should have been first paid out of the proceeds of the sale of Rosedale, and the remainder decreed to him.

1. He complains also, because the court decreed to Pilcher any part of the fund arising from the sale of the Boone lands, and gave to Pilcher and the bank improper precedence in regard to the thirteen acres of land. Swigert did not make a bargain for the equity of redemption. As between him and Marshall, his deed from the sheriff for Marshall's equity of redemption was a mortgage, and intended, not only to secure the purchase money paid for the equity of redemption, but also the whole of the debt which Marshall then owed Swigert. At the time of this purchase and mortgage Swigert knew the extent of the debt upon the property by direct mortgage, and that the Boone land also was bound in the hands of the Bank of Kentucky for its relief. He gave the bank notice of his purchase of the equity of redemption, and that he looked to the application of the fund arising from the Boone lands for his relief; besides, the bank was bound by written contract with Thomas A. Marshall and Joyes to apply the Boone lands to the liquidation of the mortgage debt. This fact was known to Swigert when he took his mortgage. From these facts the question arises, had the bank and Marshall, without the consent of Swigert, the right to apply the proceeds of the Boone lands to the payment of other debts than those that were a lien upon the thirteen acres?

On the 1st day of August, 1842, the bank held a mortgage to secure two designated debts on the 13 acres of land of Marshall, and a transfer of the Boone land to secure the same debts. On that day, Swigert, with a knowledge of these facts, took a second mortgage on the 13 acres of land. To this state of fact the principle recognized in the case of *Cheesbo-*.

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

rough vs. Millard, 1 John. Ch. R., 412, applies. (See also Story Eq., sec. 633 ) "That if a creditor has a lien on two different parcels of land, and another creditor has a lien of younger date upon one of those parcels only, and the prior creditor elects to take his whole demand out of the land on which the junior creditor has a lien, the latter will have the right to throw the prior creditor upon the other fund, or have the prior lien assigned to him, and to receive all the aid it can afford." A senior creditor cannot retain a part of his security to the prejudice of a junior creditor, and with notice that such will be its effect, and if he does he will lose his priority to that extent. *Cheesborough vs. Millard, supra.; Stevens vs. Cooper*, 1 *John. Ch. Rp.*, 430; *Guion vs. Knapp*, 6 *Paige*, 35 : *Contra* if he does it without notice : *Patty vs. Pease*, 8 *Paige*, 277. See also 1 *Vez jr.* 478; *Colyer vs. Fallon*, 1 *Turner & Russell*, 459. These principles and authorities show conclusively that, regarding the bank as first mortgagee of two funds, and Swigert as second mortgagee of one of those funds, the bank having full notice of Swigert's claim had no right to appropriate the fund arising from the Boone land to Swigert's prejudice ; and by doing so the bank became, and is, liable to him to the extent of the injury arising from such illegal appropriation. A man has no more right to change or cancel a contract to the prejudice of his creditor, than he has to make such a contract, or put his property out of the reach of his creditors.

2. It may be said that Swigert had no right to look beyond the value of the equity *of redemption*, which was mortgaged and secured by the deed. Marshall's letter to Swigert—his conferences with the bank in regard to the Boone land, show that the parties regarded Swigert as a second mortgagee. Taking in connection with these facts the paper given by Marshall to Swigert, on the 14th December, 1844, it would seem there could be no doubt on the subject. He says in that paper, "to secure the payment of the

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

above sum of money, Swigert holds a lien on my residence near Louisville, which he purchased under execution. * * * All the aforesaid property is pledged or mortgaged to secure said sum of money." From this it is plain that when this writing was given a lien already existed on the *residence*, and that it was not a lien on the equity of redemption only, but upon the whole property. Marshall, the bank, and Swigert, all regarded the latter as occupying the position of a second mortgagee. The whole conduct of all the parties show this up to the date of the sale of the Boone land, in 1846. Marshall, though pressed and harrassed with debts, from August 1842 till March 1846, never made any other pledge of the Boone land than that contained in the paper of March, 1842. Fowler, Scott, Strader, Thompson, and Loughborough were his sureties for other debts. He never named this fund to them, or gave them any right to look to it for their protection. The bank and Marshall did Swigert a wrong in diverting this fund from its legitimate purpose.

3. Pilcher's lien by his suit did not affect Swigert's equity to have the Boone fund so applied as to benefit his mortgage lien. The bank held it in express trust, to be applied to certain specified debts. Pilcher's lien by suit cannot make void such a trust. The chancellor erred in giving Pilcher any part of the Boone fund. Swigert was prejudiced thereby, and his agreement with Marshall violated.

Mrs. Marshall is a party claiming dower. She has a right to dower in what remains, after Pope's debt for the balance of the consideration due for the land is satisfied. She insists, however, that the Boone land shall be applied to the payment of the Pope debt, and that she have dower in the whole. She has no such right by contract, and such a consequence does not necessarily follow in her favor as against creditors, by an application of that fund to satisfy the Pope debt. She must come to her rights, being a volunteer, as they stood at her husband's

Swigert
vs.
Bank Ky., &c.
and
Bank of Ky.
vs.
Pilcher.

death, and not as it may be, real or personal, when his contracts are fulfilled. If such was not the rule, the wife might insist on the whole personal estate of the husband being used, to secure her dower in land.

Carneal's claim to the 10 acre lot in Louisville is not noticed in the decree. It appears that the lot was not improved or occupied by any person. The only possession Marshall ever had was to have it staked off into lots, streets, and alleys. Carneal held the legal title by deed recorded in the proper office. The writing by Carneal to Marshall is not a defeasance, because not under seal. At that date a deed or defeasance had to be sealed. "To make a good defeasance it must be by deed, for there cannot be a defeasance of a deed without a deed, and a writing under hand doth not imply it to be a deed." *Jacobs' Law Dic.*, *title*, *Defeasance*. So of a mortgage. *McGee vs. Davis*, 4 *J. J. Marshall*, 70.

Swigert's mortgage was regular. There can be no objection to a sale of the property, but in distributing the proceeds it should be done with due regard to the precedence of lien claimants. Carneal's rights have been wholly disregarded, and Swigert's postponed.

As respects the mortgage upon the six negroes, and Birney Marshall's interest in the Henry land, the court also erred. The depositions of Whelan, H. Marshall and Mrs. Marshall were taken without leave of the court. They were parties, having an interest. So far as the Henry land had been divided and he let into possession, he had a present interest, which passed to J. J. Marshall, and from him to Swigert. The court erred in dismissing Swigert's bill as to that land, absolutely. The negroes were in Marshall's possession at the date of the mortgage, and for a long time before, he controlled and paid taxes on them. The evidence, even if competent, is not sufficient to overcome Marshall's right. The court erred to the prejudice of Swigert: 1. In sanctioning

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

an improper application of the money arising from the sale of the Boone lands : 2. In regard to the 10 acre lot: 3. In not subjecting the negroes : 4. In dismissing his cross bill absolutely.

The court is referred to the following authorities : *Vanmeter vs. McFaddin*, 8 *B. Monroe.* 441 ; *Russell vs. Petree*, 8 *Ib.*, 186.

*J. Harlan* and *Bland Ballard* for the Bank of Kentucky—

There remains to be disposed of in this appeal the matters in controversy between the Bank of Kentucky and Swigert, and the Bank and Pilcher.

The court below gave the bank the first lien on the proceeds of *Rosedale*, and the Boone fund to Pope, and for $1,158 96, for which Tho. A. Marshall, Joyes and Birney were sureties, and disregarded J. J. Marshall's directions as to the application of the remainder to the satisfaction of other debts owing by him to the bank—gave Pilcher the next lien—the bank the next, and Swigert the third and last lien. We contend on behalf of the bank, and Fowler, Scott, and others, sureties in the debts which Marshall directed to be paid out of the Boone fund, that the decree is erroneous. We insist that the fund should have been disposed of in the following manner :

1st. The proceeds of *Rosedale*, after paying the costs relating to it : 1. To the discharge of the vendor's lien to Pope. 2. Of the surplus Mrs. Marshall should have had dower. 3. The remainder should have been applied to the mortgage debt. 4. The remainder of which, if any, should have been paid out of the proceeds of the Boone lands. 5. And the balance of this last named fund applied according to the directions of Marshall, to the payment of the other debts which he owed the bank, enumerated in exhibit A No. 1; and as there was not enough to pay them in full, they should have been paid *pro rata*. Neither Swigert nor Pilcher object to the four first

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

propositions, but each objects to the fifth. Pilcher contending that the decree of the chancellor is right, while Swigert contends, as does the bank, that it is erroneous, and as against the bank that he was entitled to all the money left after paying the Pope lien and the debt of $4,150.

We do not see how the decree, so far as Pilcher is concerned, can be sustained. The court proceeded upon the idea that Pilcher's bill, filed 24th April, 1845, created a *lis pendens* as to the Boone fund, and created a lien, and that Marshall had not, prior to that time, disposed of that fund. That bill created no lien upon the Boone fund. John J. Marshall was the only defendant to that bill, and it was purely a bill for discovery; and it is well settled that a bill filed for such a purpose, without naming any particular property, but praying the subjection of such property as may be discovered, gives no lien. (*Mc-Cauly, &c. vs. Rhodes, Macklin, &c.*, 7 *B. Monroe*, 462.) The doctrine of *lis pendens* has never been regarded with favor by courts. It is regarded as a harsh and rigorous rule. (*Sugden on Vendors*, 537; *Wilson vs. Wilson*, 2 *Dana*, 406; *Clarkson vs Morgan*, 6 *B. Monroe*, 447; *Miller vs. Connet*, 3 *Ib*. 203.) Pilcher, in his bill, made no reference to the Boone fund which the chancellor subjected to his demand.

The Boone land was conveyed by Marshall to the bank by an absolute conveyance, of the 19th July, 1845. And Marshall directed the bank to sell, and apply the proceeds to *all* the debts which he owed the bank. Conceding that there was, prior to this time, no specific directions as to the application of the surplus proceeds of the land after paying the debt charged on Rosedale, it is not perceived that Marshall, much less one of his creditors, could require the bank to pay him those proceeds, while Marshall remained indebted to the bank. The Boone land was sold by the bank on the 31st January, 1846, and a cash payment received, and notes taken, payable to the bank, for the balance. The

bank undoubtedly had at that time the consent and
direction of Marshall that the proceeds of the sale
should be applied to all the debts owing by him to
the bank. Pilcher's amended bill was not filed until
the 6th February, 1846, after the Boone fund had al-
ready been appropriated. And, moreover, Corbin,
the purchaser of the land, was not made a party to
the suit. (*Miller vs. Connet, supra*) But regarding
the bank as simply holding the proceeds of the
Boone land—cash and notes—without any direction
from Marshall as to their application, it would cer-
tainly be inequitable to allow another creditor of
Marshall to wrench from her those proceeds whilst
she had debts against Marshall unsatisfied. (*Jack-
son, Cox, &c. vs. Holloway*, 14 *B. Monroe*, 133.) And
especially as the sale was made under an under-
standing and agreement with Marshall that all his
debts were to be paid off out of those proceeds.
Pilcher cannot have a right to any part of such pro-
ceeds until *all* Marshall's debts to the bank are paid.

The claim of Swigert to a reversal of the case,
and to any benefit of the Boone fund, remains to be
considered.

Swigert,s counsel rely upon the letter of Marshall
to Swigert, of the date of the 26th July, 1842, as de-
siring Swigert to purchase the equity in Rosedale as
his friend, *and hold it as security for what Marshall owed
him*. The letter, we think, shows no such fact. On
the contrary, it shows that Marshall expected to re-
turn to Swigert his purchase money within three
months. The letter says: "The money can be rais-
ed by paying exorbitantly, and the money shall be
raised." He says nothing of Swigert's holding the
purchase as security, but that when he returns the
purchase money he will *convey the equity*, to be holden
as additional security. Though Marshall had trans-
ferred the Boone land to the bank several months
before the date of this letter, he does not allude to
the fact. On the contrary, he informs Swigert that
Rosedale is incumbered by $5,000 to the bank—en-

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

ters into a minute statement to show that it is worth greatly more than that sum, and clearly shows that if the purchase money is not returned, Swigert will hold subject to the judgment of $5,000, but cannot loose.

It is said Swigert had two objects in making the purchase: 1. To accommodate Marshall. 2. To obtain security for debts due to him by Marshall. The latter motive does not appear. It is true, Marshall promises if Swigert purchases to convey to him the equity as security, but it is no where intimated that the purchase in itself should constitute a security. Swigert simply stood as the purchaser of the equity of redemption, and Marshall could have redeemed by paying the purchase money and 10 per cent. That Swigert so considered, is shown by his taking a deed from the sheriff for the equity of redemption, in April, 1843. It is true, that December, 1844, Marshall and Swigert had a settlement, when Marshall gave Swigert a paper reciting that Swigert had a lien on his residence; but by that paper Marshall pledged and mortgaged said property. Upon this paper we suggest: 1. It is the private paper of Swigert; it was never recorded, and was never heard of until Swigert filed his answer. 2. For the first time we are then informed that Swigert had a lien. 3. The recital seems to be stuck in by Swigert for his own purposes; and, as if apprehensive that that recital was not enough, he adds that the above property is *pledged* and *mortgaged*.

Swigert relies that he was not the mere purchaser of the equity of redemption of Marshall in Rosedale, but, that by agreement between him and Marshall, that purchase was a mortgage or security for the whole debt due to Swigert, so understood at the time, and that fact was known to the bank. We do not admit that Swigert is entitled to relief on the hypothesis stated.

Swigert, in his purchase of the equity of redemption, contended that, as the purchaser of that equity,

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

he had the right to insist that the proceeds of the Boone fund should be appropriated to the relief of Rosedale for the $5,000, and he entitled to the surplus. This was the claim he asserted and which the bank denied. It was purely a question of law in which they were at issue. He, however, changes his claim, and now insists that he was not the mere purchaser, but the mortgagee of the equity. No allegation shows when Swigert informed the bank of his claim; it is only alledged that it was long prior to the 30th January, 1846; but was it prior to the 19th July, 1845? It is not so alledged or proved. The inference is that it was not made until after the appropriation of the Boone fund by the bank.

This case is presented by the facts: Marshall owed the bank $1,000, for which Fowler and Scott were sureties, and $5,000 secured by mortgage on Rosedale. In March, 1842, Marshall gave the bank as additional security, the Boone fund. It is said that it was afterwards agreed that this fund might be held by the bank as security for other debts. But waiving this, suppose the bank collects the debts, and Marshall had appealed to the bank to compel a surrender of the Boone fund? It is clear that the bank could not be compelled to do this except upon equitable terms—that is, upon the payment of the $1,000. (*Vanmeter vs. FcFadden*, 8 *B. Monroe*, 435.) Thus stood Swigert and the bank when Swigert bought the equity of redemption, in August, 1842. What are Swigert's rights as the purchaser of the equity of redemption? Merely: 1. To receive within a year the amount of his bid and 10 per cent. 2. If this was not done, to hold the land upon the payment of the mortgage debt existing at the time of the purchase. If, after the purchase, Marshall had paid the mortgage debt, this would not have entitled Swigert to the whole land; he would still have been compelled to pay the mortgage debt. (*Cumberland vs. Coddington*, 3 *John. Ch. R.* 229; *Campbell vs.* ——, 3 *Watts' Penn. R.* 60; *Trevor vs. Perkins*, 5 *Whart.*

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

R. 244; *March vs. Pike*, 10 *Paige*, 595; *Cornell vs. Prescott*, 2 *Barbour's N. Y. Sup. C. R.* 17.)

This is not a case for the marshaling of securities. Swigert cannot be treated as a second mortgagee. The fact that Marshall, after Swigert's purchase, gave other securities for the mortgage debts, does not better his purchase; he can acquire nothing without the payment of the mortgage debt. If the mortgagor paid it he must refund it to him; and if it be paid out of other than the mortgaged effects, still the mortgagor must be paid the amount of the mortgage debt. But there is no foundation for the idea that Swigert ever held or claimed except as purchaser of the equity of redemption, until the 14th December, 1844. And there is no pretence that the bank had notice of the claim then created. Marshall's letter does not sustain such claim. If there was any understanding, it was in parol, and not binding. The bank took the transfer 9th March, 1842, before Swigert had any claim whatever; and afterwards, on the 19th July, 1845, without any notice that Swigert had any claim but as purchaser, the bank took the legal title to the Boone lands. Having now the legal title, and the right to receive the proceeds of the sale, those proceeds cannot be wrenched from her until all her debts are paid.

Swigert cannot have the relief which he claims—

1. Because he is entitled to nothing more in any event than the proceeds of Rosedale, after satisfying the mortgage debt on it. He occupies the position of the mortgagor, and none other or better. (*Crow vs. Tinsley*, 6 *Dana*, 403.)

2. Marshall agreed with the bank that the Boone fund might be applied to his general debts. And when this agreement was made the bank had no notice that Swigert claimed otherwise than as purchaser.

3. If Swigert did claim otherwise than as purchaser, still he was only the holder of the equity of re-

SWIGERT
vs.
BANK KY., &c
and
BANK OF KY
vs.
PILCHER.

aemption, and cannot complain of the disposition of the Boone fund.

4. The bank becoming the legal owner of the Boone land, and having sold it has the legal right to receive the purchase money, and cannot be deprived of the right but upon receiving all its demands against Marshall. (*Vanmeter vs. McFadden, supra.*)

5. Fowler and Scott are entitled to relief, even if the other sureties are not. Swigert knew of this debt when he took his mortgage.

*Bodley & Pindell* for Pilcher—

The mortgage of the Boone land to the bank, by Marshall, was never recorded, and Pilcher's claim should therefore have been preferred to the mortgage debts.

The bank never acquired any right to the surplus, after the payment of the mortgage debts.

The bank could not resist the enforcement of the rule which would defeat its alledged right to the surplus acquired *lis pendens*, on the ground that the description of the land in the petition is not sufficiently specific: 1. Because its rights were not acquired in good faith, and without actual notice of the pendency of Pilcher's suit to subject the land to his unsatisfied judgment against Marshall. (*Watson vs. Wilson*, 2 *Dana*, 406; *Clarkson vs. Morgan's devisees*, 6 B. *Monroe*, 441, and authorities there cited.) 2. Because he could not be p·esumed to know, or by ordinary diligence enabled himself to describe more particularly this interest. (*McCauly vs. Rhodes*, 7 B. *Monroe*, 46.)

The *lis pendens* as to the land, created by the amended bill, was created when it was filed and before the bank acquired its claim.

The lien claimed by Swigert on Rosedale is inconsistent with the existence, in him, of any rights acquired under his purchase of the equity of redemption. (*Ormsby vs. Phillips*, 4 *Dana*, 234; *Shackleford vs. Stockton*, 6 B. *Monroe*, 396.)

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

The lien claimed by Swigert is invalid, because the papers by which it is evidenced were never recorded, and are not under seal.

Swigert claims a marshaling of securities in his favor, on the ground of an agreement with Marshall, that the purchase of the equity of redemption should operate as a mortgage when conveyed by the sheriff, because the equity had been extinguished by the decree before the levy, and therefore, not being liable to execution the sale was nugatory. (*Fenwick vs. Macey*, 2 B. *Monroe*, 487 ; *Addison vs. Crow*, 5 *Dana*, 280.) 2. Because the lien would be on a different security from that on which the bank held its lien.

Swigert could not, as the purchaser of the equity of redemption on Rosedale, claim that the Boone land should contribute to discharge the incumbrance of the bank on Rosedale, for which both were bound. 1. Because the lien on the Boone land was not created by the same instrument as that on Rosedale, nor by any instrument of record. 2. Because the Boone land was mortgaged only as additional and further security for the debts, and that after Rosedale had, by decree, been dedicated to their satisfaction.

July 1.      Judge SIMPSON delivered the opinion of the court:

William S. Pilcher, having a judgment against J. J. Marshall, and a return on an execution which issued thereon, of "no property," filed a bill on the 24th of April, 1845, in the Louisville chancery court, against the defendant in the judgment, for a discovery, and for the purpose of subjecting his estate to the payment of the debt.

The complainant filed an amended bill, on the 6th of February, 1846, by which he made Jacob Swigert, the Bank of Kentucky, and other persons defendants. He set out various mortgages and liens, that were asserted by the defendants, or some of them, on the property of Marshall, and prayed that all liens claimed against any of his property might be adjust-

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

ed, and all improper incumbrances be removed; and that so much of the property as was not legally subject to any lien, might be applied to the payment of the judgment at law, as set up in his original bill.

Many years before this suit was commenced by Pilcher, J. J. Marshall, being indebted to the Bank of Kentucky in the sum of about five thousand dollars, on which debt Thomas A. Marshall and others were his sureties, executed to his said sureties a mortgage on his farm, called Rosedale, to indemnify them on account of said liability. This farm had been purchased by Marshall from William Pope, to whom, at the date of the mortgage, he still owed a portion of the purchase money.

Pope afterwards instituted his suit in the Louisville chancery court, to enforce his lien for the unpaid purchase money. He made the Bank of Kentucky a defendant, as mortgagee. By the proceedings in said suit the court determined that J. J. Marshall owed Pope $1,010 20, with interest thereon from the 1st of February, 1840, until paid, and to the Bank of Kentucky $4,158 96, with interest from the 7th of September, 1839, until paid, and ordered Rosedale to be sold for the payment of these sums.

On the 6th of December, 1841, J. J. Marshall became the purchaser, at an execution sale, of five hundred acres of land in Boone county, which then belonged to Fowler, at the price of $2,814 80.

By an agreement between the Bank of Kentucky and Marshall, entered into on the 9th of March, 1842, the bank paid Pope his debt, and postponed the sale of Rosedale under the decree in chancery, until after the 6th of December, 1842; and, in consideration thereof, Marshall transferred to the bank the benefit of his purchase of the five hundred acres of Boone land, as further and additional security for the payment of the debts in the decree mentioned.

On the 1st of August, 1842, Jacob Swigert became the purchaser of Marshall's equity of redemption in

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

Rosedale, under a sale made by execution, and in March, 1844, the sheriff conveyed that equity of redemption to Swigert.

Swigert contends that he made this purchase under an agreement with Marshall, that he was to hold the property as security for the whole amount which Marshall owed him, and not merely as a purchaser of the equity of redemption. To establish this fact he relies upon a letter written to him by Marshall before the sale, and also upon a writing which he afterwards executed.

It becomes material in this controversy, to determine the nature and extent of the right acquired by Swigert, by his purchase of the equity of redemption in Rosedale, under the alledged arrangement with Marshall; because if, as it is insisted by the adverse parties, he did not acquire any thing by his purchase but the mere equity of redemption in the property, as that equity then existed, then, so far as he is concerned, the decree of the court below, disposing of the proceeds of the sale of Rosedale and of the Boone land, did not operate to his prejudice; inasmuch as the property did not sell for enough to pay the previous liens that existed upon it.

The conclusion that he made the purchase under an agreement with Marshall, that he was to hold the property as a security for the whole amount due to him from the latter, is, in our opinion, incontrovertibly established by the written documents adduced as evidence on the subject.

A letter written by Marshall to Swigert, previous to the sale, contains the following concluding paragraph:

"I repeat, I wish you to purchase the equity of redemption, and though I pay this debt, to hold the equity as further indemnity against all our transactions."

And in December, 1844, Marshal executed a writing acknowledging his indebtedness to Swigert on

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs
PILCHER.

settlement, in the sum of $3,795 14, which writing contains the following statement: "To secure the payment of the above sum of money, Swigert holds a lien on my residence near Louisville, which he purchased under execution."

Now, the only lien which Swigert held on the property referred to, was that acquired by him under the arrangement made with Marshall previous to the purchase of the equity of redemption therein, and in conformity with which the purchase was made by him. It is, therefore, perfectly evident that the parties regarded that purchase as conferring on Swigert a lien upon the property, to secure the payment of the whole amount that Marshall owed him.

But it is contended that such an agreement, if entered into, could not operate to enlarge the legal effect of the purchase of the equity of redemption, and therefore Swigert can only claim in this controversy the same interest in the property that he would have acquired by his purchase, in the absence of any agreement between him and Marshall.

It may be, as intimated in the case of *Addison vs. Crow*, 5 *Dana*, 280, that the equity of redemption cannot be legally sold under execution, after a suit has been instituted by the mortgagee, (as was the case here,) to sell the property mortgaged; and that the execution creditor must, in such a case, make an application to the court to be made a party to the suit, and be thus placed in an attitude to assert his demand. We do not, however, decide this point at this time, as it is not necessary to do so. The mortgagor, even after a decree of foreclosure and sale, is regarded in equity as the owner of the property. If he should pay the debt, as he would have an undoubted right to do, the property would still belong to him. If a sale be made, only so much of the property will be sold as is required to pay the debt, and the residue, whatever it may be, will still belong to him.

Swigert,
vs.
Bank Ky., &c.
and
Bank of Ky.
vs.
Pilcher.

1. A mortgagor, even after a decree of foreclosure and order of sale, is still regarded in equity as the owner of the mortgaged property. He has the right to pay off the debt and hold the property. If a sale is made, only so much will be sold as will pay the mortgage debt. Consequently the mortgagor has the right to procure another to pay the mortgage debt for him or to buy the equity of redemption when it is sold under execution, and give such purchaser a lien for the price paid, and for any other liabilities to such purchaser, who will occupy the position of a second mortgagee.

Marshall then, at the time he made the agreement with Swigert to purchase the equity of redemption, had an interest in the property, which he had a right to transfer to the latter as an indemnity. The mode which the parties adopted to effect that object, although not the most eligible, was, as between themselves, valid and obligatory in a court of equity. Marshall having consented to a sale of the equity of redemption, for the very purpose of creating a lien upon the property, was estopped from denying the validity of a purchase thereof, made at his own instance. Neither could he have claimed the right to redeem, by the payment merely of the amount of the purchase money; inasmuch as he had agreed that the purchaser should have a lien on the property, by virtue of his purchase, for the whole amount that he owed him. Had he subsequently paid any part of the mortgage debt, the payment would have enured to the benefit of Swigert, by increasing the value of the interest in the property to which his lien had attached. So far as the parties themselves were concerned, Swigert occupied the same attitude precisely that he would have done, if he had been a second mortgagee by a formal conveyance. It was in the power of the parties, by an agreement, to impart to the purchase of the equity, the same effect as between themselves, that would have resulted from the execution of a deed of conveyance on the property, for the purposes contemplated by thier agreement.

2. A valid lien in equity may be created by writing not under seal.

It is contended however, that as neither of the papers evidencing the agreement and the lien claimed under it, is under seal, that they are ineffectual to create any lien upon the property. This objection to the writings bears alone upon the question of their *legal* validity. It is, however, alone in equity that the agreement can have any effect, and an equitable lien on real estate could be created when the writings alluded to were executed, by a written agreement which was unsealed. Indeed, when the

last writing was executed, a seal to a deed had been dispensed with by the statute. But this is not material in this controversy, inasmuch as the writing, not having been recorded, can only be made available in a court of equity, where it is valid without being under seal.

SWIGERT
vs.
BANK KY, &c.
and
BANK OF KY.
vs.
PILCHER.

Considering Swigert, then, as being invested with an equitable lien on Rosedale, valid as against Marshall, the question occurs, did it give him any right in equity to have the interest in the land in Boone, which Marshall transferred to the Bank of Kentucky as additional security, appropriated to the payment of the debts for which the bank held a mortgage on the same property on which Swigert's lien existed.

The doctrine is well settled, that if one creditor have a lien on two funds, and another have a lien of a younger date upon one only of the two funds, the latter will have an equitable right to have the debt of the prior creditor paid out of the fund to which the lien of the latter does not extend; or to have the lien on that fund assigned to him, and to receive from it all the aid it can afford him. (*Bank of Kentucky vs. Vance*, 4 *Littell*, 169; *Story's Equity*, sec. 633; 1 *Johnson's Chancery*, 412 )

3. A creditor having a lien upon two funds may, by a subsequent lien-holder on one of the funds, be compelled to exhaust the fund upon which the latter has no lien, before resorting to that on which he has a lien also.

It is denied, however, that this principle can apply in this case. It is contended that there is an interposing equity, which was acquired by the bank before she had any notice of the equitable lien claimed by Swigert, and that consequently a court of equity will never marshal securities when the rights of others, fairly acquired, will be thereby prejudiced.

It appears that, on the 19th of July, 1845, the sheriff of Boone conveyed the five hundred acres of land in Boone county to the bank; and that afterwards, on the 30th of January, 1846, Marshall executed a writing, authorizing the bank to sell the land, and directing the proceeds of the sale, or the greater part thereof, to be applied to the payment of other debts, due by him to the bank, than those for the payment

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

of which the property on which Swigert had a lien was liable.

It is contended, on the part of the bank, that she had no notice of the existence of Swigert's lien, when this appropriation of the fund was made by Marshall; and that as she had obtained the legal title to the land, without any notice of his lien, and having sold it, had the fund in her possession, that a court of equity ought not to deprive her of it, to pay it to another creditor, and leave the debts due to her unpaid.

Swigert alledged in his answer and cross bill, that he frequently informed the bank of his claim, and conversed with the president and her attorney on the subject; and he called upon the bank to answer and say, if he did not, long previous to January, 1846, inform them of his lien, and reliance on the Rosedale farm as his security for a large sum of money due from Marshall. In response to this interrogatory, the bank admitted in her answer, that Swigert and Marshall both stated to the president and counsel of the bank that Marshall was indebted to Swigert, and that Swigert was secured, and held the equity of the residence of Marshall, as additional security for the balance due him. It is true that the bank, in an amended answer to Swigert's cross bill, denied all knowledge of the existence of the writing, executed by Marshall to Swigert, bearing date the 14th of December, 1844, until it was filed in this suit. But the knowledge of that writing was not material. The bank was apprised that Swigert claimed to hold a lien on Rosedale, to secure him in the payment of a balance due him by Marshall. It is expressly admitted that he informed the bank that he looked to the fund arising from the sale of the Boone land, to come in aid of his lien on the other property. It is perfectly evident, from the answer of the bank, that she was informed by Swigert, long before she obtained the legal title to the Boone land, that he held a lien on the property for the whole balance due to him

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

from Marshall, and not merely for the sum bid by him when he purchased the equity of redemption, and therefore her knowledge of the existence of the writing referred to was wholly immaterial. Besides, it is evident that Swigert, in his arrangement with Marshall, looked to the Boone fund as enhancing the value of his lien on Rosedale. He so informed the bank after his purchase, and as the control of this fund had been acquired by the latter, for the very purpose of contributing towards the payment of the debts for which the Rosedale property was bound, he had a right in equity to have it thus applied.

As then, the Bank was apprised of Swigert's lien before she acquired the legal title to the land, and before the money that might arise from the sale thereof had been directed by Marshall to be applied to other debts due by him to the bank, the rights of Swigert cannot be prejudiced, either by such subsequent acquisition of the legal title, or by the directions afterwards given by Marshall in relation to the disposition of the fund.

At the time that Marshall transferred to the bank his interest in the Boone land, under the agreement already referred to, he owed the bank, besides the debts therein mentioned, another debt of $1000, for which Fowler and Scott were his sureties. It is therefore now insisted, that as to this debt, at least, the bank has an equity on this fund superior to that of Swigert. As Marshall's interest in this land was transferred to the bank, for the express purpose of being applied to the payment of the balance of the $5000 debt, and the debt paid to Pope by the bank, to pay which debts a decree to sell Rosedale had been rendered, it is conceded by all the parties to this controversy that those two debts have to be first paid, and the only contest between them is in regard to the residue of the two funds.

The debt referred to, of one thousand dollars, was owing to the bank by Marshall, before Swigert became interested in the Rosedale property. But as

4. The chancellor will not divest a creditor of a fund which

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

has been trans-
ferred to him
by an insolvent
debtor, for the
purpose of bene
fitting another
creditor of the
insolvent, when
the equities are
equal, until all
his just claims
against the in-
solvent are sat-
isfied.  unless
such claims
were created
subsequently to
notice of the
equity of the
creditor seeking
to subject it.

the terms of the transfer of the Boone land were explicitly set forth, and did not embrace this debt, Marshall still had an equity in that property, which he could have disposed of, unaffected by it, unless the fact of his insolvency would have given to the bank a right in equity to have insisted on its payment, as well as the payment of the debts specified in the agreement of the parties, before she should be deprived of the possession of the fund. We think it is a very clear proposition, that Marshall himself would not, under the circumstances, have been aided by a court of equity to withdraw the fund from the hands of the bank, until this debt, as well as the others, had been paid. Swigert's equity on the fund cannot be stronger or more available than that of Marshall himself. Being a mere creature of equity, it must be subject to such just and equitable regulations as will prevent it from operating unjustly on the rights of others. The bank had a transfer of Marshall's right to the land, which did not, it is true, invest her with the legal title, until the sheriff's deed was executed, but it conferred on her a right in equity to refuse to surrender the title she had acquired, until the debt for one thousand dollars was paid, inasmuch as her debtor was insolvent. If an assignee of Marshall had acquired the legal title, a different question altogether would have been then presented. The bank would have been compelled to seek the aid of a court of equity, and having no specific lien upon the property for the debt, could not have made it liable for its payment. But where one creditor is seeking the aid of a court of equity to reach a fund in the hands of another creditor, the defendant will not be compelled to surrender the fund, until his debt be first paid out of it. So, also, where the plaintiff sets up and relies upon a mere equity; that equity will not be allowed to prevail against an equal equity asserted by the defendant. Besides, the legal title, after the execution of the sheriff's deed, was by relation vested in the bank from, if not prior to, the

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.

time of the transfer by Marshall; so that, previous to the assertion of this equity by Swigert, the bank had acquired the legal title to the property, and had, also, an elder and superior equity to the fund arising from its sale.

But although the bank has a valid equity, to the extent of this debt, yet as she had notice of Swigert's claim, before the creation of the subsequent debts due to her, she has no equity on the fund to secure their payment. To create debts to operate as a charge upon a fund, with a knowledge that a third person was equitably entitled to it, would involve a violation of good faith, and could not be sanctioned in a court of equity.

The Boone land was subject to some liens which we do not understand to be controverted. The Rosedale property was also subject to the incumbrance of a dower right, which, after deducting the amount of the debt due to Pope, the original vendor, should attach to, and be estimated alone on, the balance of the purchase money. After the debts due to the bank, including the one thousand dollar debt, for which Scott and Fowler were sureties, have been satisfied, Swigert will, so far as the bank is concerned, be entitled to the residue of the funds arising from the sale of Rosedale, and the land in Boone county. And unless Pilcher, as a general creditor, can intervene and deprive him of it, he has a clear equitable right to this part of the fund:

On the part of Pilcher it is argued that the agreement between Marshall and Swigert, not having been recorded, is wholly invalid as to creditors; and consequently that it must yield to the claim of the complainant, who is a judgment creditor.

This whole argument is based on a misconception of the rights of the parties in a court of equity. Mortgages and other deeds of conveyance, and agreements creating liens, which are not recorded, are not valid in a court of law, against creditors, nor against any legal right to the property which they

5. Mortgages and deeds of trust, not recorded, are not valid at law against creditors, nor against any legal right to the property which.

SWIGERT
vs.
BANK KY., &c.
and
BANK OF KY.
vs.
PILCHER.
___
creditors ac-
quire in good
faith; but when
the parties con-
testing all claim
under equities,
courts of equity
decide upon
equitable prin-
ciples. (Bank
of Kentucky vs.
Vance, 4 Littell,
169; Bailey &
Carter vs. Welch,
4 B. Mon. 244.)

6. A general
creditor coming
into a court of
equity for relief,
cannot, in gen-
eral, claim any-
thing which the
debtor could not
claim, unless in
cases of fraudu-
lent disposition
by the debtor.
He can claim no
equitable right
which the debtor
himself could
not assert.

may in good faith acquire.. But this doctrine has no application where the parties are all asserting and relying upon mere equities, and are in a court of equity, seeking its aid on equitable principles. (*Bank of Kentucky vs. Vance*, 4 *Littell*, 169; *Bailey & Carter vs. Welch, &c.*, 4 *B. Monroe*, 244.)

A general creditor, when he comes into a court of equity to obtain satisfaction of his debt out of the estate of the debtor, cannot, as a general rule, successfully assert any claim to his debtor's property, unless indeed where a fraudulent disposition of it has been made, which the latter could not himself render available. If the debtor have only an equitable interest in property, any lien or incumbrance on that equity, if not fraudulent, that would be valid against the debtor, will also be valid against the creditor, in a court of equity. The creditor has only an equity on his debtor's estate, and that equity does not exist until he commences his suit to subject some specific part of the estate to the payment of his debt. This equity cannot prevail against an elder equity, for as between mere equities, that which is prior in time is regarded as best, and takes precedence over any which may be subsequently created.

From this doctrine it results that Pilcher, as a general creditor, cannot subject, to the payment of his debt, any part of the Boone fund, or the fund arising from the sale of Rosedale, against the rights of Swigert, whose equity thereto existed long prior to the commencement of the present action. Nor has he any right to the fund against the claim of the bank, all of whose debts were due before his bill was exhibited, and whose equity is equal to that of any attaching creditor. Indeed the bank had acquired the legal title, and converted the land into money before he obtained any lien whatever on the property. In his original bill he sought a discovery, and the payment of his debt out of the estate of his debtor, but did not proceed against any specific property, nor make any person a defendant but the debtor himself.

SWIGERT
*vs.*
BANK KY., &c.
and
BANK OF KY.
*vs.*
PILCHER.

The matters contained in the original bill were, therefore, insufficient to create a lien upon the fund in controversy, and that fund had all been appropriated by an arrangement between Marshall and the bank before he filed his amended bill. But this view we consider immaterial, inasmuch as the bank had, when the original bill was filed, an equity to the fund, which a court of equity would not deprive her of in favor of a creditor who had no equity until he filed his bill, and who by that act did not acquire any legal advantage, but only a right in equity to have so much of his debtor's estate subjected to the payment of his debt, as could be done without doing injustice to other creditors, or to the claimants of the property.

As the court below has not made any final disposition of that part of the controversy that relates to the lots in the city of Louisville, that branch of the case is not now before us for revision. But we would remark, that whatever interest Marshall had in the ground conveyed to Swigert, at the time he executed to him the deed of mortgage, passed by that deed to the mortgagee.

The slaves embraced by the mortgage did not belong to the mortgagor, and consequently so much of Swigert's cross bill as sought to subject them to sale for the payment of his debt, was properly dismissed. But as a contingent interest in the land passed by the mortgage, the cross bill of Swigert, so far as the land that was transferred by James Birney Marshall to J. J. Marshall, was concerned, should have been dismissed without prejudice, and not absolutely.

Wherefore, the decree of the court below is reversed on the appeal of Swigert against the Bank of Kentucky and Pilcher, and also on the appeal of the Bank of Kentucky against Pilcher, and cause remanded, that a decree may be rendered in conformity with this opinion.

[Chief Justice MARSHALL did not sit in this case.]