CASE 63.—ACTION BY THE STAR DRILLING MACHINE CO. AGAINST GEORGE R. McLEOD AND OTHERS TO RECOVER A MACHINE SOLD TO DEFENDANT.— April 11.

## Star Drilling Machine Co. v. McLeod, &c.

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for defendants. Plaintiff appeals. Reversed.

1. Sales—Elements—Payment—Acceptance and Use—Where, on receiving a payment, a company delivered a drilling machine for a ten day test, after which, if it fulfilled certain guaranties, the person receiving it agreed to accept it at a certain price, for which he was to give notes and a chattel mortgage, and he continued to use it after the ten days expired, though without giving the notes and mortgage, the transaction constituted a sale, and not a mere option, even if the payment made were denominated rent by the parties.

2. Same—Lien for Price—Under a contract, for sale of a drilling machine, whereby the buyer agreed to give notes and a chattel mortgage for the unpaid portion of the price, which he failed to do, the seller had a lien for the unpaid portion.

3. Same—Priorities—Attachment—The lien retained by a seller of a machine for its price, though unrecorded, has priority over the lien of an attachment by general creditors.

4. Dismissal—Grounds—Error in Form of Action—That an action was brought in ordinary, when it should have been in equity, was not ground for dismissal, where the petition showed plaintiff's right to relief, but it should be transferred to the equity docket.

HACKETT & JAMES for appellant.

## POINTS CONSIDERED AND AUTHORITIES CITED.

1. The appellant's petition and amended petition state facts which constitute a cause of action and therefore the trial court erred in sustaining the appellee's demurrer.

2. The appellant's exhibit "A" containing the agreement between appellant and appellee McLeod shows there was no sale of the property involved in this action, but a letting to hire and an option to buy.

3. Before there is a sale there must exist in the contract a mutual obligation both upon the vendor and vendee, and there was no mutuality in the contract between appellant and appellee McLeod.

4. The intention of the parties govern in a sale, and the property does not pass until the parties intend that it shall. Neither party intended that the title in this case should pass until McLeod had given the property a test trial and had executed notes and mortgages for its payment. (Vaughn v. Hobson, 10 Bush, 337; Benbridge v. Caldwell, 4 Dana, 213; Amer. and Eng. Ency., 1st Ed., vol. 21, page 648; Stembridge v. Stembridge, 9 Ky. Law Rep., 91; Clark on Contracts, page 168; Parson on Contracts, 7th Ed., 448; Benjamin on Sales, 4th Amer. Ed., sec. 320; Alderman v. Eastern R. R. Co., 115 Mass., 233; Farmers and Merchants Nat. Bank v. Logan, 74 N. Y., 568; Allen v. Williams, 12 Pick., 297; Am. and Eng. Ency., vol. 21, page 507; Kentucky Refining Co. v. Globe Refining Co., 20 Ky. Reporter, 778).

BAIRD & RICHARDSON and J. W. JONES for Clark, appellee.

1. Appellant cannot maintain an action for possession. The appellant has not title to the property under the writing sued on; nor has it a lien on the property as against McLeod's creditors, who are presumed to have given credit upon the faith of the property held in lien. Moreover, it was not entitled to recover the property against McLeod, much less his creditors, inasmuch as it was a mere lien holder.

2. This court has often held a mortgagee of a chattel or mere lien holder cannot maintain an action of replevin against an officer leving on the property under legal process. (McIsaacs v. Hobbs, 8 Dana, 269; Dillo v. Wright, 7 J. J. M., 10; Squires v. Smith, 10 B. M., 35).

3. Section 180, Civil Code of Practice, has not changed the common law in this respect.

4. Giving to the contract the broadest and most liberal construction, the appellant had only a lien, which did not give him the right to take possession of the property; nor to sue for and obtain an order of delivery for that purpose.

5. The appellant should have instituted his action and sought the relief provided in section 299, Civil Code of Practice, instead of under section 180.

### AUTHORITIES CITED.

Baldwin & Co. v. Crow, etc., 86 Ky., 679; Three Forks Lumber Co. v. Smith, etc., 17 Ky. Law Rep., 566; Welch, Jr. v. The Nat'l Cash Register Co., 19 Ky. Law Rep., 1664; Wicks Bros. v. McConnell, 20 Ky. Law Rep., 84; Glover & Durett, v. Williams Adm'r, 20 Ky. Law Rep., 1261; Baldwin & Co. v. Manning, 20 Ky. Law Rep., 1995; Baldwin & Co. v. Owen, etc., 21 Ky. Law Rep., 352; Townsen & Co. v. Frazee, 21 Ky. Law Rep., 1183; Bówsben Bank v. Porter's Exc., 22 Ky. Law Rep., 429; Herman v. Whitescarver's Adm'r, 89 Ky., 633; Ky Stat., sec. 495 and 1908; McIsaacs v. Hobbs, 8 Dana, 269; Dillo v. Wright, 7 J. J. M., 10; Squires v. Smith, 10 B. M., 35; Civil Code. sections 180, 299.

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

In July, 1904, the Star Drilling Machine Company delivered to Geo. K. McLeod a portable drilling machine, which McLeod used in drilling oil wells in Barren county. On October 17, 1904, creditors of McLeod brought suit in the Barren circuit court against him and took out attachments, which were levied on the drilling machine. Thereupon the Star Drilling Machine Company brought this suit, alleging that it was the owner of the property and took out an order of delivery for it. The written contract under which the machine was delivered to McLeod was filed as part of the petition. The court sustained the demurrer of the creditors to the petition of the Star Drilling Machine Company and entered judg-

ment in their favor. From this judgment the company appeals.

. The judgment of the court is based on the idea that the written contract between the company and McLeod constituted a sale of the property by it to him. It is insisted for the company that the contract is not a sale, but only an option, or offer to sell, and that title to the property remained in the company. The written contract, so far as material, is in these words: "Memoradum of agreement, made in duplicate, this 16th day of July, 1904, by and between, the Star Drilling Machine Company of the city of Akron, county of Summit, and State of Ohio, party of the first, and George McLeod of city of Masontown, county of Fayette, and State of Pennsylvania, party of the second part: Witnesseth that the said first party has this day agreed to furnish to said second party, one No. 7 Star Portable Drilling Machine, oak frame, with 20 H. P. Oil Country Boiler, mounted on its trucks, together with the ropes and tools mentioned in the schedule hereto annexed, and made part hereof. The said first party agrees to load said machine on board cars at Akron, Ohio, for shipment; said second party agrees to receive the same upon its arrival at Glasgow, Kentucky, and to pay the freight and charges upon the same. The said party of the first part, warrants said machine to be of good materials, to be well made, and to do good work in drilling, pipe driving, or prospecting, if properly managed. It is agreed that said machine shall be furnished by said first party to the second party on a test trial of ten days, from its arrival at Glasgow, Kentucky, and that until the end of said test trial and until the complete fulfillment of the

conditions of this agreement as herein set forth, that
the title and possession of said machine shall remain
vested in the party of the first part.  At the end of
said test trial, hereinbefore mentioned, the party of
the second part agrees to accept said machine in the
manner hereinafter set forth, provided the said
machine shall have fulfilled the guarantee herein, and
it is agreed that until said machine is accepted, a
net rental of fifty cents per foot for the amount
drilled shall be paid by the party of the second part
to the party of the first part, but that when accepted
and all the conditions of the contract hereinafter set
forth have been complied with, the rental shall not
be required.  In consideration of the agreements
hereinbefore set forth, the party of the second part
agrees to pay to the party of the first, twenty-four
hundred ($2,400) dollars, in manner and form fol-
lowing, to wit:  On receipt of a copy of this
agreement, $500.00, and upon the acceptance of said
machine to furnish the following promissory notes,
drawn up in due form, and the payment thereof to
be secured by chattel mortgage on machinery, boiler,
ropes and tools.  (Here follows schedule of notes to
be executed).  Said second party agrees to deliver,
or mail said payments and notes promptly upon the
completion of the test trial, and the acceptance of
said machine.''

The plaintiff alleged in the petition that $500 was
paid, but charged that it was paid as rent, and that
this was left out of the contract by oversight and
mistake.  It also alleged that McLeod had failed to
execute the notes and mortgage referred to; that he
had bored a number of wells, which, at fifty cents a
foot, amounted to more than the sum he had paid it;

that under the contract McLeod only held the machinery for the purpose of testing it, and that -he at the end of ten days decided to reject the plaintiff's offer to sell and did not accept it, and failed and refused to execute the notes and mortgage as provided in the contract; that McLeod had no rights in the property, other than to use it as rented property, that at the end of ten days from the execution of the agreement plaintiff's offer to sell lapsed, and was not open for acceptance after that time. The rule in this State is that whether a contract is a sale of property or a renting of it will be determined by the court from the substance of the writing taken as a whole, and not by the name which the parties may give the contract, or the form in which they may put it. If the writing had specified that the $500 was paid for the rent of the machine, this would not have changed its legal effect. The fact, · therefore, that such a clause was omitted from the contract by oversight, or mistake, is immaterial, if the contract with such a clause in it would constitute a sale of the property, for the fact that the parties stipulated that the $500 should be treated as paid on rent would not be conclusive on the court, if from the whole . contract it was clear it was paid as purchase money on a contract of sale. Baldwin & Co. v. Crow, 86 Ky., 679, 9 Ky. Law Rep., 836, 7 S. W., 146; Welch v. National Cash Register Co., 103 Ky., 30, 44 S. W., 124, 19 Ky. Law Rep., 1664; Wicks v. McConnell, 102 Ky., 434, 43 S. W., 205, 20 Ky. Law Rep., 84; Townsend v. Frazee, 54 S. W., 722, 21 Ky. Law Rep., 1183.

The substance of the contract is that the company guaranteed the machine to be of good material, to

be well made, and to do good work if properly managed, and that it gave McLeod ten days after the arrival of the machine at Glasgow to test it, and at the end of that time McLeod was to accept the machine if it filled the guaranty and settle for it as provided in the contract. When after ten days' trial McLeod continued to use the machine, he could not be heard to say that he had not accepted it. His failure to execute the notes and mortgage, as provided in the contract, did not affect his obligation. The company could at the end of the ten days have sued him for the balance of the purchase money and enforced a lien on the property. His continued use of the machinery, and its acquiescence in such use, made it a complete contract of sale. The title to the machinery vested in McLeod, but subject to the lien of the company for the unpaid purchase money. His failure to execute the notes and mortgage according to the contract put the company in no worse position than if he had complied with it. As between the company and McLeod, it is clear that it had a lien on the machinery for the unpaid balance of the price due from him. Its lien, though unrecorded, is good against subsequent attaching creditors. Baldwin v. Crow, 86 Ky., 679, 9 Ky. Law Rep., 836, 7 S. W., 146, and cases cited. The reasons for this rule are thus admirably stated by Judge Simpson in Swigert v. Bank of Kentucky, 56 Ky., 290: "A general creditor, when he comes into a court of equity to obtain satisfaction of his debt out of the estate of the debtor, cannot, as a general rule, successfully assert any claim to his debtor's property, unless, indeed, where a fraudulent disposition of it has been made, which the latter could not himself render

available.  If the debtor have only an equitable inter-
est in property, any lien or incumbrance on that
equity, if not fraudulent, that would be valid against
the debtor, will also be valid against the creditor
in a court of equity.  The creditor has only an equity
on his debtor's estate, and that equity does not exist
until he commences his suit to subject some specific
part of the estate to the payment of his debt.  This
equity cannot prevail against an elder equity, for as
between mere equities that which is prior in time
is regarded as best, and takes precedence over any
which may be subsequently created.''  An attaching
creditor can acquire no greater right in attached
property than the attachment defendant has at the
time of the attachment.  He simply obtains by his
attachment such rights as the debtor then had.
Drake on Attachments, section 245.  It follows,
therefore, that the attaching creditors of McLeod
obtained by their attachments only a lien on the
machinery referred to, subject to the older equity
of the drilling company.

The Circuit Court properly discharged the order
of delivery and properly held that the drilling com-
pany was not the owner of the property, but he erred
in sustaining the demurrer to the petition of the
drilling company and dismissing its action.  Though
the plaintiff had brought its action in ordinary,
when it should have been in equity, the fact that the
action was brought on the wrong docket was no
reason for dismissing it.  The facts stated in the
petition being sufficient to show that the plaintiff
was entitled to a lien on the property, the court
under the prayer for proper relief might give the
plaintiff such relief as the facts showed it was

entitled to.   The case of Herrman v. Whitescarver's Adm'r, 89 Ky., 633, 10 Ky. Law Rep., 539, 13 S. W., 103, was tried on its merits.   It was an action by the purchaser for the property, and was not so framed as to warrant the enforcement of a lien by him for what he had paid on the contract.   Here, in any event, a sale must be ordered by the court.   On the return of the case the Circuit Court will transfer the action to the equity docket and consolidate it with the attachment suits.   He will then adjust the rights of the parties as the facts may warrant.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

Petition for rehearing by appellee overruled.